## PEOPLE v BAHODA

Docket No. 139303. Submitted August 11, 1993, at Lansing. Decided
October 19, 1993, at 9:25 A.M. Leave to appeal sought.

Saad Bahoda was convicted by a jury in the Oakland Circuit
Court, Richard D. Kuhn, J., of conspiracy to possess with intent
to deliver and to deliver more than 650 grams of cocaine. He
was sentenced to mandatory life imprisonment without parole.
He appealed, alleging several errors.

The Court of Appeals *held:*

The defendant was denied a fair trial, even if he did not
object to every instance of alleged misconduct by the prose-
cutor, because the cumulative effect of the prosecutor's errone-
ous comments could not have been cured by a jury instruction.

1. The prosecutor's repeated reference to the fact that the
defendant and several of the alleged conspirators were Chal-
dean Iraqis was improper, especially because the trial took
place during the Persian Gulf War against Iraq. It is error
requiring reversal to deny a defendant a fair trial by making
irrelevant and inflammatory ethnic allusions.

2. The prosecutor committed prejudicial error in introducing
evidence of agreements by accomplices-turned-informants to
testify truthfully in order to suggest that the government had
some special knowledge that the witnesses were testifying
truthfully, and impermissibly elicited testimony from law en-
forcement officers regarding the steps they had taken to ensure
that the informants were telling the truth.

3. The prosecutor's comments regarding the strength of the
case against the defendant were improper.

4. The trial court did not err in admitting evidence that the

REFERENCES

Am Jur 2d, Trial §§ 523, 658, 660, 661, 666, 681, 682, 692, 693.

Propriety and prejudicial effect of prosecutor's argument to jury
indicating his belief or knowledge as to guilt of accused—modern
state cases. 88 ALR3d 449.

Prosecutor's appeal in criminal case to racial, national, or religious
prejudice as ground for mistrial, new trial, reversal, or vacation
of sentence—modern cases. 70 ALR4th 664.

Supreme Court's views as to what courtroom statements made by
prosecuting attorney during criminal trial violate due process or
constitute denial of fair trial. 40 L Ed 2d 886.

defendant's car had a secret compartment that contained a gun holster, but did err in admitting highly prejudicial evidence regarding the defendant's role in the beating of a drug dealer that was irrelevant to his participation in the conspiracy.

Reversed.

1. Criminal Law — Prosecuting Attorneys — Inflammatory Ethnic Allusions.

It is error requiring reversal for a prosecutor to deny a defendant a fair trial by making irrelevant and inflammatory ethnic allusions regarding the defendant.

2. Criminal Law — Prosecuting Attorneys — Witness' Agreement to Testify Truthfully.

A prosecutor's introduction of evidence regarding a witness' agreement to testify truthfully is prejudicial error where the evidence is introduced to suggest that the government has some special knowledge that the witness is testifying truthfully.

3. Criminal Law — Prosecuting Attorneys — Expressions of Guilt.

A prosecutor may not express a personal belief in a defendant's guilt or attempt to place the prestige of the prosecutor's office, or that of the police, behind a contention that the defendant is guilty; guilt must be argued on the basis of the evidence.

4. Criminal Law — Prosecuting Attorneys — Evidence.

A prosecutor may not introduce irrelevant highly prejudicial evidence to show that the defendant is a bad person who deserves to be convicted.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people.

*Fried, Saperstein, De Vine & Kohn, P.C.* (by *Steven R. Sonenberg*), for the defendant.

Before: Hood, P.J., and Cavanagh and R. J. Taylor,* JJ.

Per Curiam. Defendant was convicted by a jury,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

as charged, of conspiracy to possess with intent to deliver and to deliver more than 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2) (a)(i). He was sentenced to mandatory life imprisonment without parole, and appeals as of right. We reverse.

The charge arose from an alleged conspiracy to import and sell drugs in the metropolitan Detroit area. Many of the alleged participants in the conspiracy were Chaldean Iraqis. Defendant's trial took place in 1991, during the third and fourth weeks of the Persian Gulf War against Iraq.

Defendant first argues that he was denied a fair trial by the prosecutor's misconduct. Specifically, defendant complains that the prosecutor made numerous references to his nationality, that he vouched for the credibility of the people's informants and for the strength of the people's case, and that he appealed to the jury's fear of drug trafficking in their community. We agree that defendant was denied a fair trial, even if he did not object to every single instance of misconduct now complained of, because the cumulative prejudicial effect of the prosecutor's comments could not have been cured by an instruction. *People v Gonzalez,* 178 Mich App 526, 534-535; 444 NW2d 228 (1989); *People v Rosales,* 160 Mich App 304, 307; 408 NW2d 140 (1987).

During opening argument, the prosecutor noted defendant's nationality and mentioned that many people in the courtroom audience were also Chaldean. Later, the prosecutor followed the lead of one of his witnesses who, despite defense counsel's successful objections, repeatedly referred to defendant as being part of the "Arab connection." The prosecutor even told the witness, after being told to rephrase a question, that the witness could "[t]alk about the Columbians [sic] and everybody

all you want, but we can't mention that 'A' word, do you understand?" The prosecutor also elicited the Arabic nationality of several witnesses who allegedly conspired with defendant to sell drugs and asked them about the large Chaldean population in the Detroit area. He even referred to the "Arabs" during closing argument.

"A defendant's opportunity for a fair trial may be jeopardized when the prosecution interjects issues broader than the guilt or innocence of the accused." *People v Rohn,* 98 Mich App 593, 596; 296 NW2d 315 (1980). Even in civil trials, "[i]t is reversible error to deny the opposing party a fair trial by making irrelevant and inflammatory ethnic allusions." *George v Travelers Indemnity Co,* 81 Mich App 106, 114; 265 NW2d 59 (1978) (involving "protracted inquiry into the plaintiffs' Chaldean ethnic affiliation"). Whenever "racial, ethnic, or religious matters" are mentioned "there is always the risk of incidentally arousing prejudice— and this Court abhors injecting the poison of prejudice into any legal proceeding." *Id.* "Any effort to arouse the prejudice of the jury 'cannot be overlooked, nor can it ever, in the final analysis, prove other than detrimental to the interests of the litigant whose counsel resorts to such a course.' " *Id.* (quoting *Solomon v Stewart,* 184 Mich 506, 511; 151 NW 716 [1915]). The prosecutor's ethnic allusions were clearly improper, especially because they were made in the context of the Persian Gulf War.

Similarly, it is a prejudicial error to introduce evidence of a witness' agreement to testify truthfully "if used by the prosecutor to suggest that the government has some special knowledge that the witness is testifying truthfully." *People v Enos,* 168 Mich App 490, 492; 425 NW2d 104 (1988). Such testimony should be admitted only with

great caution. *Rosales, supra* at 311. For example, in *Enos,* the defendant's conviction was reversed where the prosecutor not only discussed the plea agreements and the promise to testify truthfully, but also told the witnesses that the deal would be voided if they lied and then recalled a particular witness, forced him to admit he had lied, threatened to charge him with perjury, asked him if he had lied about anything else—which he denied—and then reemphasized these events during the closing argument. *Enos, supra* at 492-495.

Here, the prosecutor elicited testimony from two accomplices-turned-informants that the prosecutor had personally promised to send them to prison for life without parole if they lied. He forced one of them to admit that, although he "could" lie and embellish his story, he would not do so because he had been promised life in prison if he lied. The prosecutor referred to this promise again during closing argument. Further, the prosecutor impermissibly elicited testimony from law enforcement officers regarding the steps they had taken to ensure that the informants were telling the truth. See *Rosales, supra* at 311; see also *People v Smith,* 158 Mich App 220, 230-231; 405 NW2d 156 (1987). The prosecutor's comments were improper in light of these cases.

Also, a prosecutor is not permitted to inflame the jury's emotions regarding "the drug problem." *People v Williams,* 65 Mich App 753, 756; 238 NW2d 186 (1975). Further, he may not express a personal belief in the defendant's guilt. *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974). " 'The prosecutor may not attempt to place the prestige of his office, or that of the police, behind a contention that the defendant is guilty, but he may argue that the evidence shows that the defendant is guilty.' " *People v Erb,* 48 Mich App 622,

632; 211 NW2d 51 (1973) (quoting *People v Cowell,*
44 Mich App 623, 628; 205 NW2d 600 [1973]).

During closing argument, the prosecutor stated
that the street value of the cocaine involved was
enough "to retire the debt of half the Third World
countries" and was more "than all of us together
will earn in our lifetime probably." He told the
jury that the evidence might give them the im-
pression "that this whole world is full of dope
dealers" but that that was because "we get them
all in this trial because we're working with one of
the biggest organizations that you can ever imag-
ine." He also referred to evidence that tended to
show that some activities in furtherance of the
alleged conspiracy had taken place at a public
swimming pool and asked, "How much do you
think of this happens when you're out at the
swimming pool?"

Additionally, the prosecutor stated several times
that his case was very strong, that "[t]his is in
front of you, it is in black and white moving
pictures and it doesn't get any better than that,"
and that the evidence was so strong that "some-
times these cases seem too good." He stated that
"[t]his wasn't a bought case, this was a perfect
case, this was a perfect case. These dope cases
don't get any better." Finally, he said that the
case had been "presented to you well wrapped up,
well organized, [and] that's as good as it is going to
get" and asked "[w]hat more can you possibly
expect law enforcement to do to prove the case to
you?" Again, the prosecutor's comments were im-
proper.

Defendant also argues that the prosecutor erred
in introducing evidence that there was a very
unusual secret compartment in defendant's car
that contained a gun holster and also by introduc-
ing evidence that defendant may have facilitated

an assault by driving another drug dealer to the location where he was beaten. We agree in part.

Evidence of the secret compartment was marginally relevant and therefore the trial court did not abuse its discretion in admitting it. However, the beating occurred well after the termination of the alleged conspiracy. Therefore, evidence of defendant's role in the beating was irrelevant to defendant's participation in the conspiracy. Such evidence was also highly prejudicial because it contributed to the prosecutor's effort to show that defendant was a bad person who deserved to be convicted.

It is possible that the prejudice resulting from some of the errors below could have been cured by a timely instruction. In the aggregate, however, and in light of the timing of the trial and of the credibility disputes involved, these errors undoubtedly deprived defendant of a fair trial. Given the mandatory life sentence without parole, we cannot reward the prosecutor's improper attempt to obtain a conviction at any cost.

Defendant also argues that his sentence constitutes cruel and unusual punishment. Because we are ordering a new trial, this issue is moot. We note, however, that the Supreme Court has rejected defendant's argument. See *People v Fluker,* 442 Mich 891; 498 NW2d 431 (1993); *People v Loy-Rafuls,* 442 Mich 915; 503 NW2d 453 (1993).

Reversed.