**LaShawn HARRIS, Petitioner and Cross–Respondent,**

v.

**The PEOPLE of the State of Colorado, Respondent and Cross–Petitioner.**

**No. 93SC155.**

Supreme Court of Colorado,
En Banc.

Jan. 17, 1995.

Rehearing Denied Feb. 6, 1995.

David F. Vela, State Public Defender, Thomas K. Carberry, Deputy State Public Defender, Denver, for petitioner and cross-respondent.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert M. Russel, First Asst. Atty. Gen., Robert M. Petrusak, Jonathan Arnold Abbott, Asst. Attys. Gen., Denver, for respondent and cross-petitioner.

Frances Smylie Brown, Forrest W. Lewis, Denver, for amicus curiae Colorado Crim. Defense Bar.

Nathan B. Coats, Chief Deputy Dist. Atty., Second Judicial Dist., Denver, for amicus curiae Colorado Dist. Attys. Council.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *People v. Harris,* No. 91CA0390 (Colo. App. Dec. 24, 1993) (not selected for official publication), the court of appeals affirmed the trial court's judgment based on a jury verdict finding the petitioner and cross-respondent, LaShawn D. Harris, guilty of first degree assault.[1] In so doing, the court of appeals agreed with Harris's argument that the prosecuting attorney's conduct during closing argument was improper but rejected Harris's argument that such conduct re-quired reversal of the judgment. Harris has appealed that determination. The People contend on cross appeal that the court of appeals erred in concluding that the prosecutor's remarks were improper. We affirm in part, reverse in part, remand the case with directions.

I

During the late evening of August 11, 1990, Harris and several of his friends, including Hoover James and a person known as "Leech," were walking along Denver's 16th Street Mall. Harris and Leech began arguing, and James warned Leech to stop or suffer injury. Leech left the scene, but soon returned with two companions, Tracy Rudisel and David LeMoine. Although James told Rudisel and LeMoine to stay out of the argument between Harris and Leech, Harris and Rudisel then began to argue, and during the course of this argument Harris shot Rudisel in the chest.

Harris was arrested on August 12, 1990, and charged with the offense of assault in the first degree. Harris conceded that he had shot Rudisel, but raised affirmative defenses of intoxication and self-defense. A jury trial commenced on January 14, 1991, during a period of time just prior to the initiation of military action by the United States and other nations against Iraq.[2]

On January 17, 1991, the President of the United States announced that military action against Iraq had commenced. Later that day the prosecutor and Harris's attorney presented closing arguments to the jury. During his initial closing argument, the prosecutor made the following statements:

When you put together all of the testimony and you look at all of the exhibits in this case, you come to realize that what I told you in opening statements is true. For no good reason, no good reason at all, but for a combination of a lot of bad reasons, this Defendant, anxious to use this deadly weapon, acted like a bully and a thug last August and he used extreme and totally unwarranted violence against anoth-

---

1. § 18–3–202, 8B C.R.S. (1986 & 1994 Supp.).

2. The action is referred to as the "Persian Gulf War."

er human being, and he hurt him severely. For this, this Defendant needs to be held responsible.

You know, this Defendant's inhumanity to his fellow man did not attract a lot of attention during the first part of last August. This city, this country, this world were more focused on a more exaggerated act of violence early last August. Another man, filled with a sense of the power of his killing weapons that he wanted to use, acted like a thug and bully and used extreme and unwarranted violence against a neighboring country full of human beings, and he hurt them severely. I speak, of course, of Saddam Hussein and the brutality he used for no good reason against Kuwait last August.

Defense counsel objected to these statements as follows:

I'm going to object. If [the prosecutor] is trying to compare my client to Saddam Hussein, I think that is totally irrelevant. I would object.

The prosecutor responded in the following manner:

Your Honor, I'm not comparing. Certain principles are the same.

The trial court overruled the objection, stating as follows:

Well, I trust this jury is sophisticated enough to see that there's no association whatsoever. I'm not sure where your rhetoric is going, but please continue.

The prosecutor then continued as follows:

Ladies and gentlemen, we can debate, as did the United States Congress, whether or not the United States should have to take the primary responsibility to hold that violent dictator accountable for his violent crime. But there is no debate that this jury in Denver, Colorado, and this court of law in Denver, Colorado, does have the moral and the legal responsibility to hold this violent Defendant accountable for his violent crime committed last August in the City of Denver.

For over five months, the victim, Tracy Rudisel, and all of us have waited for an opportunity to have this violent criminal held responsible for his actions. This has

truly been a week of decision not only for you here in Courtroom 16, but all around the world. Unpleasant facts have to be faced. Good and honest people like you are called on now to serve their government and demonstrate their courage against the bully and the thug.

In the process, the hope, as was stated by [the President] last night, is to create a world where the rule of law, not the rule of the jungle, governs our conduct. No nation will be permitted to brutally assault its neighbor, and in this case, no person shall be permitted to brutally assault his fellow human being. The 16th Street Mall should not be a jungle. As [the President] said when he talked about the air attack last night, even at that moment, his thoughts were not on war; his thoughts were on peace, the peace he hoped to obtain. So, too, one can hope that someday, men, women, the elderly, and children can walk the streets of Denver without fear of being assaulted by individuals like this Defendant.

. . . .

This was a very intentional act, made clear not only by the words right after the shooting, but by the words uttered by this Defendant right before the shooting: "I'm going to teach you a lesson, white boy." That's more or less the same thing that Saddam Hussein said to the United States last night; he's still saying he's going to teach us a lesson.

. . . .

[The President] last night quoted a woman officer stationed in the Persian Gulf named Jackie Jones. He quoted her as saying, "If we let him get away, who knows what's going to be next." And, no, this Defendant is not Saddam Hussein, but a lot of the same principles apply. This violence was not on the same level as the violence used by Saddam Hussein, but you can't let unwarranted violence go unchecked. Justice over there and here in this courtroom requires courage. Please have the courage to find this Defendant guilty of what he did, first degree assault.

Defense counsel did not object to these statements and did not request a mistrial. Dur-

ing closing argument defense counsel described the prosecutor's references to Saddam Hussein as irrelevant.

In his rebuttal argument, the prosecutor made the following comments:

> Ladies and gentlemen, again, let me make clear that which I stated in my first closing argument, that, no, this Defendant is not Saddam Hussein. The amount of violence is grossly different. The location of the violence is grossly different. One act is halfway around the world; the other act is less than a quarter of a mile from where you now sit right in the heart of our city of Denver. They both have been involved in naked, unwarranted aggression against defenseless human beings, and they both need to be held responsible.

Defense counsel did not object to these statements and did not request a mistrial.

Harris was convicted and sentenced to thirteen years' imprisonment. Harris appealed his conviction to the court of appeals, raising, *inter alia*, the following issue:

> Whether the Prosecution's outrageous closing argument, in which [the defendant] was compared to Saddam Hussein, abrogated [the defendant's] right to a fair trial.

The court of appeals affirmed. The court concluded that the prosecutor's references to Saddam Hussein and the Persian Gulf War were improper, but that they did not constitute reversible error.

## II

In his petition for certiorari review of the court of appeals' decision, Harris asserted, *inter alia*, that the court erred in concluding that although the prosecutor made improper comments during closing arguments, the comments did not constitute reversible error.[3] The People petitioned for certiorari review of the court of appeals' conclusion that the prosecutor's closing arguments contained improper comments. Having agreed

to address these issues, we do so simultaneously.

## A

 In *Wilson v. People*, 743 P.2d 415 (Colo.1987), we observed that "a prosecutor, while free to strike hard blows, 'is not at liberty to strike foul ones.'" *Id.* at 418 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). In *Wilson* we also pointed out that because a prosecutor represents the "sovereign whose obligation to govern impartially is as compelling as its obligation to govern at all," the prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done." *Wilson*, 743 P.2d at 418 (quoting *Berger*, 295 U.S. at 88, 55 S.Ct. at 633). This governmental aspect of a prosecutor's role in conducting criminal proceedings on behalf of all the people of the state gives rise to the justified immunity that protects prosecutors in the performance of their duties. *See, e.g., Pleasant v. Lovell*, 654 F.Supp. 1082, 1092 (D.Colo.1987); *McDonald v. Lakewood Country Club*, 170 Colo. 355, 363–64, 461 P.2d 437, 440 (1969). This governmental responsibility also imposes upon the prosecutor the responsibility to refrain from improper methods calculated to produce a wrong conviction as well as to use every legitimate means to bring about a just one. *Wilson*, 743 P.2d at 418.

 The constitutional basis for this prosecutorial duty is the right to trial by a fair and impartial jury guaranteed by both the Sixth Amendment to the United States Constitution and Article II, Sections 16 and 23, of the Colorado Constitution. *Oaks v. People*, 150 Colo. 64, 68, 371 P.2d 443, 446–47 (1962). In *Oaks*, we made the following observations:

> Among the rights guaranteed to the people of this state, none is more sacred than that of trial by jury. Such right compre-

---

**3.** The defendant also asserted that the trial court erred in admitting into evidence a cassette tape and text of the lyrics of a song entitled "Welcome to the Terrordome" and "in refusing to consider the prosecutor's prior misconduct in assessing whether reversible error occurred." We denied Harris's request for certiorari review on the for-

mer issue. Although we granted Harris's request for certiorari review on the latter issue, the record reveals that it was not properly preserved for our review. We therefore conclude that certiorari review of this issue was improvidently granted, and decline to address it.

hends a fair verdict, free from the influence or poison of evidence which should never have been admitted, and the admission of which arouses passions and prejudices which tend to destroy the fairness and impartiality of the jury. This right to a fair and impartial jury "is all-inclusive: it embraces every class and type of person. Those for whom we have contempt or even hatred are equally entitled to its benefit. It will be a sad day for our system of government if the time should come when any person, whoever he may be, is deprived of this fundamental safeguard."

*Id.* at 68–69, 371 P.2d at 447 (quoting *United States v. Haupt,* 136 F.2d 661, 671 (7th Cir. 1943)). A jury that has been misled by inadmissible evidence or argument cannot be considered impartial. *Oaks,* 150 Colo. at 68, 371 P.2d at 446–47. *See Wilson,* 743 P.2d at 418–19; *Jones v. State,* 88 Okla.Crim. 243, 202 P.2d 228, 232 (1949).

■ Because the right to trial includes the right to trial by an impartial jury empaneled to determine the issues solely on the basis of the evidence introduced at trial rather than on the basis of bias or prejudice for or against a party, prosecutorial misconduct that misleads a jury can warrant reversal of a conviction. *See People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990) (citing *Berger,* 295 U.S. 78, 55 S.Ct. 629), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991). *See also Wilson,* 743 P.2d at 418–21 (reversing and remanding case for new trial where prosecutor's arguments to the jury "far exceeded the outer limits of proper advocacy" and thus "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction"); *People v. Elliston,* 181 Colo. 118, 123, 126, 508 P.2d 379, 381–82 (1973) (recognizing that granting of a mistrial is a remedy for prejudicial statements by a prosecutor while concluding that in context a mistrial was not required); *People v. Jones,* 832 P.2d 1036, 1040–41 (Colo.App.1991) (reversing and remanding a case for new trial under plain error analysis because prejudicial effect of prosecutor's statements so undermined the fundamental fairness of the trial as to cast serious doubt upon the reliability of the judgment of conviction); *People v.*

*Adams,* 708 P.2d 813, 815–16 (Colo.App.1985) (reversing and remanding a case for new trial because prosecutor's arguments injected an inflammatory issue not involved in the case into jury deliberations). *Cf. People v. District Court In and For the City and County of Denver,* 767 P.2d 239, 241 (Colo. 1989) (affirming trial court's order granting a mistrial because prosecutor introduced evidence that was inadmissible and highly prejudicial); *People v. Lee,* 630 P.2d 583, 591–92 (Colo.1981) (reversing and remanding for new trial in part because prosecutor elicited prejudicial and irrelevant testimony concerning the defendant's role in the death of his victim's unborn child, a crime for which he was not charged), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982).

To prevent prosecutorial misconduct, we have developed standards defining the limits of proper prosecutorial advocacy. *See, e.g., People v. Oliver,* 745 P.2d 222, 228 (Colo. 1987) (it is unprofessional conduct for a prosecutor to use arguments calculated to inflame the passions or prejudices of the jury); *Wilson,* 743 P.2d at 419 (it is improper for prosecutor to express his or her personal belief in the truth or falsity of testimony during final argument); *People v. Ferrell,* 200 Colo. 128, 131, 613 P.2d 324, 326 (1980) (it is improper argument for prosecutor to encourage jurors to retaliate against defendant; rather, prosecutor's argument should be "restricted to the evidence and reasonable inferences to be drawn therefrom on the issue of whether guilt is proved beyond a reasonable doubt"). In addition, guidelines for appropriate prosecutorial conduct are contained in the ABA *Standards for Criminal Justice, Prosecution Function and Defense Function* (3d ed. 1993) (hereafter the "ABA *Standards* "), which have frequently been acknowledged by this court. *See, e.g., Oliver,* 745 P.2d at 228 (citing ABA *Standards* §§ 3–5.8 and 3–5.2); *Wilson,* 743 P.2d at 419–20 (citing ABA *Standards* § 3–5.8); *People v. Mason,* 643 P.2d 745, 752 (Colo. 1982) (citing ABA *Standards* § 3–5.8(c)); *Lee,* 630 P.2d at 592 (citing ABA *Standards* § 3–5.6); *People v. Estep,* 196 Colo. 340, 344, 583 P.2d 927, 930 (1978) (citing ABA *Standards* § 5.8(b) Commentary), *cert. denied,*

440 U.S. 983, 99 S.Ct. 1796, 60 L.Ed.2d 245 (1979); *People v. Wright,* 182 Colo. 87, 91–92, 511 P.2d 460, 463 (1973) (quoting ABA *Standards* § 5.8(b)). Section 3–5.8 of the ABA *Standards,* entitled "Argument to the Jury," contains the following pertinent language:

(c) The prosecutor should not make arguments calculated to appeal to the prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence.

ABA *Standards* § 3–5.8 (3d ed. 1993). The commentary to this standard contains the following statements:

Remarks calculated to evoke bias or prejudice should never be made in a court by anyone, especially the prosecutor. Where the jury's predisposition against some particular segment of society is exploited to stigmatize the accused or the accused's witnesses, such argument clearly trespasses the bounds of reasonable inference or fair comment on the evidence. There are many cases in which courts have reversed convictions as the result of inflammatory remarks made by a prosecutor containing references to the defendant's race, religion, or ethnic background.

. . . .

The prosecutor should not make arguments that encourage the jury to depart from its duty to decide the case on the evidence and the inferences reasonably derived therefrom.... Predictions about the effect of an acquittal on lawlessness in the community also go beyond the scope of issues in the trial and are to be avoided.

ABA *Standards* § 3–5.8 Commentary (3d ed. 1993).

■ The determination of whether a prosecutor's statements constitute inappropriate prosecutorial argument is generally a matter for the exercise of trial court discretion. *People v. Moody,* 676 P.2d 691, 697 (Colo.1984); *Ferrell,* 200 Colo. at 131, 613 P.2d at 326; *Elliston,* 181 Colo. at 123, 508 P.2d at 381; *People v. Jacobs,* 179 Colo. 182, 187, 499 P.2d 615, 618 (1972). A trial court must determine whether the prosecutorial

misconduct in all probability influenced the jury's result or affected the fairness of the proceedings. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Wright,* 182 Colo. 87, 511 P.2d 460; *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973); *People v. Walker,* 180 Colo. 184, 504 P.2d 1098 (1972). See *Ferrell,* 200 Colo. at 132, 613 P.2d at 328 (Quinn, J., dissenting). However, if an appellate court concludes that prejudice created by a prosecutor's conduct was so great as to result in a miscarriage of justice, a new trial may be granted notwithstanding the trial court's failure to impose such sanction. *Moody,* 676 P.2d at 697; *People v. Goldsberry,* 181 Colo. 406, 410, 509 P.2d 801, 803–04 (1973).

**B**

■ Application of these principles to the circumstances of this case requires the conclusion that the prosecutor's repeated references to past and present military operations by and against Saddam Hussein were not only irrelevant but constituted improper encouragement to the jurors to employ their patriotic passions in evaluating the evidence. The evidence was conflicting with regard to the circumstances of the altercation resulting in Rudisel's injuries. One critical issue for jury determination was the issue of Harris's state of mind at the time he shot Rudisel. The prosecutor's repeated characterizations of Harris as a thug and a bully who, like Saddam Hussein, needed punishment were not calculated to direct the jury to relevant evidence supporting a conviction. The characterizations appear rather to reflect the prosecutor's conclusions that Harris was a bully and a thug who deserved punishment. A prosecutor may not in the guise of zealous argument impress the jury with the prosecutor's conviction of a defendant's guilt. *Jones,* 832 P.2d at 1040; *Wright,* 182 Colo. at 92, 511 P.2d at 463 (quoting ABA *Standards* § 5.8). While a prosecutor is an advocate for justice in every case, overly aggressive advocacy cannot be permitted to undermine the quest for impartial justice.

There is of course no bright line separating permissible oratorical embellishment and impermissible oratorical excess. One need

not abandon effective debate techniques or eschew metaphoric nuance in accepting the restrictions inherent in the prosecutorial function. As the foregoing cases reveal, the context in which challenged prosecutorial remarks are made is significant, including the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the point in the proceedings at which the remarks were made. Irrelevant issues or evidence may not be injected into the case at any juncture.

In this case, the prosecutor diverted the jury's attention to the attack on Kuwait by Saddam Hussein some five months prior to the commencement of Harris's trial. Defense counsel immediately objected, asserting that any comparison of Harris to Saddam Hussein was irrelevant. The trial court agreed that the references were irrelevant, but in effect concluded that it would await further developments. The prosecutor then referred to the military operations in progress that day; quoted comments of the President the preceding evening, including a statement by an officer stationed in the Persian Gulf; referred to the fact that citizens like the jurors were engaged in combat against the bully and the thug Saddam Hussein; and compared statements of Harris to statements of Saddam Hussein.

These multiple references to the character of Saddam Hussein, the military operations in the Persian Gulf, and the bravery of American troops may well reflect creative inspiration and rhetorical sophistication—attributes admirable in any advocate. However, as our decisions have established, presentation of closing arguments is not simply an exercise in oratorical skill. A prosecutor must not encourage jurors to determine a defendant's guilt or innocence on the basis of bias or prejudice; indeed, jurors are specifically cautioned that they must determine

guilt or innocence on the basis of the evidence presented. They must evaluate the credibility of witnesses on the basis of the witness' demeanor and conduct in the courtroom, with the exception of admissible impeachment evidence. Repeated references to events occurring outside the courtroom, involving persons not party to the proceedings, can all too easily encourage jurors to abandon their role of evaluating the evidence under circumscribed legal standards. While argumentative devices may properly be employed to strengthen a point or a perspective, they cannot be utilized to turn the impartial quest for truth into an impassioned expression of anger.

We conclude that the prosecutor's repeated references to the Persian Gulf War, the President, and Saddam Hussein's character as reference points from which to determine Harris's guilt or innocence constituted improper closing argument. Whether resulting from carefully planned strategy, from inspired rhetorical creativity, or from other causes, the prosecutor's comments repeatedly encouraged the jurors to compare Harris and his conduct to conduct and personalities irrelevant to the case. The court of appeals did not err in concluding that these comments were improper.

### C

■■■■ Harris contends that in the circumstances of this case he is entitled to a new trial because of the prejudicial effect of the prosecutor's improper closing arguments.[4] We agree.

■■■■ As previously noted, the prosecutor's initial reference to the Persian Gulf War and Saddam Hussein evoked an objection from Harris on the ground of relevancy. In response, the trial court in effect informed

---

4. We note that while prosecutorial misconduct which prompts a defendant to seek a mistrial may in some situations raise problems of double jeopardy, *People v. Espinoza*, 666 P.2d 555, 558 (Colo.1983), no such issue exists in this case. Colorado has adopted a subjective test resolving such issues, under which a retrial is barred only if prosecutorial or judicial misconduct giving rise to the mistrial was intended to provoke the defendant into moving for a mistrial. *Id.* at 559

(citing *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)).

There is no evidence in this case that the prosecutor intended to provoke a mistrial. To the contrary, the evidence demonstrates a strong intent on the part of the prosecutor to obtain a conviction. Hence, double jeopardy considerations present no obstacles that would preclude the grant of a new trial in this case for prosecutorial misconduct.

the jury that any purported analogy between Saddam Hussein and Harris was irrelevant. The trial court also stated that it could not predict the direction further prosecutorial comments might take.[5] Defense counsel did not object to any of the additional prosecutorial comments which form the basis of this appeal and did not request a mistrial. The trial court, therefore, was never given the opportunity to consider what prejudice, if any, was created by the prosecutor's improper comments.[6] Thus, the appropriate standard of review is that of plain error. *See Wilson,* 743 P.2d at 419 (where no contemporaneous objection is made to the asserted error or defect, appellate review is limited to determining whether the error or defect rises to the level of plain error); Crim.P. 52(b) (permitting review of plain errors or defects affecting substantial rights not brought to the attention of the court). Plain error is that which so undermines the fundamental fairness of a trial that it casts serious doubt on the reliability of the ultimate verdict. *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992). *See Wilson,* 743 P.2d at 418–21; *People v. Winters,* 765 P.2d 1010, 1014 (Colo.1988). Prosecutorial misconduct amounts to plain error which provides a basis for reversal only where there is a "substantial likelihood that it affected the verdict or deprived a defendant of a fair and impartial trial." *People v. Constant,* 645 P.2d 843, 847 (Colo.1982).[7]

▬▬▬ This court has previously recognized that the admittedly drastic remedy of a new trial is compelled when a prosecutor's statements have severely compromised a defendant's constitutional right to a fair trial. *See, e.g., Wilson,* 743 P.2d 415; *Hines v. People,* 179 Colo. 4, 497 P.2d 1258 (1972). *See also Jones,* 832 P.2d 1036; *Adams,* 708 P.2d 813; *People v. Trujillo,* 624 P.2d 924 (Colo.App.1980). In view of the prosecutor's repeated remarks, the temporal context of this trial, and the critical role of witness credibility in this case, we conclude that there is a substantial likelihood that the prosecutor's improper comments impermissibly prejudiced the defendant's right to have his guilt determined by an impartial jury applying applicable legal standards to facts found on an objective evaluation of the evidence. In these circumstances, a new trial is the appropriate remedy for the deprivation of the defendant's right to a fair trial. *Wilson,* 743 P.2d at 419–20.

Closing argument occurred on the day this country entered the Persian Gulf War. Pervasive media reports resulted in unprecedented national awareness of events leading up to and culminating in the decision to deploy United States armed forces in the Persian Gulf. The citizens of this country were understandably anxious about the situation and angered at Saddam Hussein's reported conduct. The trial court recognized these facts in the following comment made to the jurors immediately prior to the commencement of their deliberations:

5. In response to defense counsel's objection, the prosecutor stated, as he did to the jury on more than one occasion, that Harris was not Saddam Hussein but that "the principle" was the same or similar. One principle alluded to in the prosecutor's remarks is the principle that brutes, thugs, and bullies should be punished. Another principle is the principle that third persons such as jurors should act with courage to punish brutal thugs and bullies. These psychological propositions do not constitute legal standards.

6. We would be remiss, however, not to reemphasize that "it is the responsibility of the trial court 'to ensure that final argument to the jury is kept within proper, accepted bounds.'" *Wilson,* 743 P.2d at 419 (quoting ABA *Standards,* § 3–5.8(e) (2d ed. 1980)).

7. We are mindful of the fact that application of the plain error standard may not, in all cases, be sufficient to deter prosecutorial misconduct. Indeed, even the application of the doctrine of harmless error in cases wherein prosecutors have engaged in improper argument has been criticized as too often rewarding such conduct while purporting to deter it. *United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 661 (2d Cir.1946) (Frank, J., dissenting) (Prosecutor's references in closing argument on June 7, 1944, to the Invasion of Normandy on the previous day were not only ill advised and over zealous, as recognized by the majority, but also highly prejudicial requiring new trial). However, in the absence of a *per se* rule requiring reversal of jury verdicts in every case in which improper prosecutorial argument occurs—a rule which presents its own difficulties—we continue to address the issues of prejudice and fairness encompassed in the plain error doctrine on a case-by-case basis. *See People v. Mills,* 192 Colo. 260, 263, 557 P.2d 1192, 1194 (1976).

We are also under unusual circumstances in that there are highly dramatic and significant world events developing today. Ordinarily, we kind of keep jurors isolated from the world. If there is any particular event of note beyond just those incessant, "I'm still sitting in a hotel in Saudi Arabia and there are still planes flying overhead," if anything develops, I'll get that information to you so that you stay apprised of significant world events. I'm sure you're all interested. You may have relatives or friends there and you may be concerned about their safety as well.

It is of course impossible to determine what personal feelings each juror had about the Persian Gulf War at that time. The prosecutor elected to appeal to the jurors' sense of patriotism by exhorting them to "serve their government and demonstrate their courage against the bully and the thug" Harris, just as the United States was holding Saddam Hussein responsible for his violent acts. The prosecutor's suggestion that the jury's duty to convict Harris was similar to the efforts of the United States to check the "naked, unwarranted aggression [by Saddam Hussein] against defenseless human beings" diverted the jury from its responsibility to objectively evaluate all of the evidence in the case. According to the analogy advanced by the prosecutor, failure by the jury to convict Harris would be tantamount to the failure to brand Saddam Hussein's aggressive acts as reprehensible. The resulting prejudicial effect of such an analogy cannot be ignored. *See Viereck v. United States,* 318 U.S. 236, 248, 63 S.Ct. 561, 566–67, 87 L.Ed. 734 (1943) (suggesting that where passion and prejudice are aroused by our participation in a war, it is improper to appeal to the patriotic passions of the jury in urging a conviction); *Flanagan v. State,* 107 Nev. 243, 810 P.2d 759, 767 (1991) (Springer, J., dissenting) (characterizing a person as a loyal supporter of Saddam Hussein renders fair verdict very difficult if not impossible). *See also People v. Bahoda,* 202 Mich.App. 214, 508 N.W.2d 170, 172 (1993) (prosecutor's suggestions that defendant's ethnicity made him part of the "Arab Connection" and therefore more likely to be guilty of drug distribution was "clearly

improper especially because they were made in the context of the Persian Gulf War" and, combined with other errors, required reversal); *People v. Scott,* 494 N.W.2d 765 (Mich. App.1992) (trial court's statements at sentencing hearing comparing defendant's conduct to Saddam Hussein's scud missile attacks, to rape, and to murder required reversal and remand for new sentence).

The conclusion that these comments were substantially prejudicial is compelled when the conflicting and inconclusive nature of the evidence presented at trial is taken into consideration. Respondents argue that because the evidence regarding the fact that Harris committed the shooting was overwhelming, any existing error could not rise to the level of plain error. We have previously noted that the sufficiency of the evidence presented at trial will be considered on appeal when evaluating claims of prosecutorial misconduct. *See Taylor v. People,* 723 P.2d 131, 134–35 (Colo.1986). Although Harris conceded that he committed the shooting, the evidence was directly conflicting with regard to Harris's state of mind at the time of the shooting. Harris asserted that he acted only in self-defense. The testimony of witnesses describing events which led up to the shooting varied dramatically. In order to make a fair determination as to Harris's legal culpability, the jury was required to evaluate carefully the credibility of each of the witnesses. The prosecutor's analogy between Saddam Hussein's unprovoked aggression and Harris's conduct served only to direct attention away from the issue of the credibility of witnesses. The prosecutor highlighted the compelling need to check unwarranted violence whether it be by Saddam Hussein or Harris, ignoring the fact that the pivotal issue was whether Harris had engaged in such unprovoked aggression or whether his actions were the product of self-defense.

In this case, the prosecutor's comments were repeated over the course of the entire closing argument, with a "probable cumulative effect on the jury which cannot be disregarded as inconsequential." *Trujillo,* 624 P.2d at 926 (quoting *Berger,* 295 U.S. at 89, 55 S.Ct. at 633). In addition, there was no admonition from the judge to the jury re-

garding these improper remarks which could have negated or counterbalanced the improper remarks. *See Mason,* 643 P.2d at 752–53. Our system of justice cannot tolerate verdicts based on bias and prejudice rather than on the relevant facts and applicable law.

### III

For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part. The case is remanded to that court with directions to vacate the judgment of the trial court and remand the case to that court for a new trial.

VOLLACK, J., concurs in part and dissents in part, and ROVIRA, C.J., joins the concurrence and dissent.

Justice VOLLACK concurring in part and dissenting in part:

The majority holds that the prosecutor's repeated references to the Persian Gulf War, the President, and Saddam Hussein's character during closing argument at the trial of LaShawn Harris for first-degree assault constituted plain error depriving the defendant of a fair trial. Maj. op. at 266. I agree that the prosecutor's remarks constituted improper closing argument. I disagree, however, that these statements rose to the level of plain error entitling Harris to a new trial. Because I conclude that the prosecutor's comments were not so prejudicial as to undermine the fundamental fairness of the trial and to cast serious doubt on the reliability of the verdict, I would affirm the court of appeals' judgment.

### I.

The majority's statement of the facts accurately sets forth the facts and the prosecutor's remarks during closing argument.

### II.

Because the defendant did not contemporaneously object to all of the prosecutor's references to the Persian Gulf War, the President, and Saddam Hussein in closing argument, the majority correctly evaluates these statements under a plain error standard of review. *See* Crim.P. 52(b). Under this standard, we must determine whether the statements of counsel so undermined the fundamental fairness of the trial itself as to cast serious doubt upon the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415, 419–20 (Colo.1987). Improper remarks warrant reversal when they are "pronounced and persistent, with a probable cumulative effect on the jury which cannot be disregarded as inconsequential." *People v. Trujillo,* 624 P.2d 924, 926 (Colo.App.1980) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (added emphasis omitted)). "Unless a prosecutor's misconduct is flagrant or 'glaringly or tremendously' improper, it is not plain error. . . ." *People v. Constant,* 645 P.2d 843, 847 (Colo.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). In considering whether prosecutorial misconduct mandates a new trial, appellate courts must evaluate the magnitude of the prejudicial effect of the statements, any curative measures taken to mitigate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction. *People v. Jones,* 832 P.2d 1036, 1040 (Colo.App.1991). To warrant a new trial, the nature of the prosecutorial misconduct must have affected the trial process itself. *People v. McKay,* 191 Colo. 381, 384, 553 P.2d 380, 382 (1976). This court has found plain error where guilt turned on the veracity of the defendant and the prosecution stated numerous times that the defendant had lied. *Wilson,* 743 P.2d at 420–21.

The United States Supreme Court has held that, absent "consistent and repeated misrepresentation" to influence a jury, "[i]solated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion[,] not of evidence, do not reach the same proportions." *Donnelly v. DeChristoforo,* 416 U.S. 637, 646, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). In contrast, improper closing arguments that follow prosecutorial misconduct during the course of the trial is the type of impropriety that more likely justifies reversing a conviction. *See Berger v. United States,* 295 U.S. 78, 84–89, 55 S.Ct. 629, 631–33, 79 L.Ed. 1314 (1935).

With these principles in mind, I cannot agree with the majority that the nature of the prosecutor's comments during closing argument affected the fundamental fairness of the proceedings or the integrity of the jury's verdict. My review of the record convinces me that the prosecutor's references to the Persian Gulf War, the President, and Saddam Hussein's character did not sway the jury by inhibiting the jury from weighing the evidence objectively and that, absent the prosecutor's remarks, the verdict would not have been different. *See United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983).

### III.

The role of the trial judge is to administer justice, control courtroom decorum, and ensure that the case is decided on the basis of relevant evidence and the proper inferences therefrom. *State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993). The trial court is responsible for controlling the scope of closing argument. *Wilson,* 743 P.2d at 419. In *United States v. Modica,* 663 F.2d 1173 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), the Second Circuit highlighted the role of the trial court:

> The district judge is in an especially well-suited position to control the overall tenor of the trial. He can order the offending statements to cease and can instruct the jury in such a manner as to erase the taint of improper remarks that are made. The ABA Standards for Criminal Justice recognize that "[i]t is the responsibility of the [trial] court to ensure that final argument to the jury is kept within proper, accepted bounds." ABA Standard 3–5.8. The trial judge can interrupt to anticipate and cut off an improper line of argument. Once the offending remarks are made, the judge can strike them and forcefully instruct the jury as to their inappropriateness. If persuaded in a rare case that irreparable prejudice has occurred, the court retains the option of granting a motion for a mistrial.

Beyond these traditional trial-conduct remedies, the court has a range of remedies that may, in appropriate circumstances, be directed specifically at the attorney.

*Id.* at 1184–85 (brackets in original).

Here, the trial judge was in the best position to gauge the impact of the prosecutor's remarks during closing arguments to the jury. The trial judge overruled defense counsel's objection and did not feel that an admonishment to the jury was needed.[1] The trial record strongly indicates that the jury would have convicted appellant even if the improper statements had not been made.

Although the prosecutor's references to the Gulf War and Saddam Hussein were inappropriate social commentary that was best left unsaid, in light of the overwhelming evidence, I do not consider the conviction to be the product of the jury's emotion rather than reflective judgment. When the prosecutor's comments are viewed within the context of the trial as a whole and the evidence presented, they did not distort the law or obscure the state's burden of proof. Both the judge and the prosecutor told the jury that the prosecutor was not comparing Harris's criminal conduct with Hussein's acts of violence against Kuwait. Rather, the prosecutor used Saddam Hussein to illustrate the notion of an unprovoked aggressor using an excessive degree of force in light of the conflict. The prosecutor's remarks did not prod the jury to disregard the evidence but highlighted the implausibility of Harris's self-defense claim.

While I do not condone the prosecutor's improper closing remarks, on balance, I conclude that they neither constituted a material factor in Harris's conviction nor were they so prejudicial as to divert the jurors from properly deciding the case based on judging the evidence before them. My conclusion that the jury verdict was premised upon the overwhelming evidence and the law is supported by a complete review of the prosecutor's comments in the context of the evidence presented, the defense counsel's remarks to the jury, and the court's instructions to the jury.

---

1. Defense counsel objected to the prosecutor's initial reference to Saddam Hussein and the Per- sian Gulf War. No further objections were made by defense counsel.

Harris was charged with first-degree assault. Immediately after the assault, Tracy Rudisel, the victim, Christopher Jackson, a friend of Harris, and David LeMoine, Rudisel's friend and co-worker, heard Harris say, "Welcome to the Terrordome."[2] Further, Harris fled from the scene and reencountered Jackson. Harris admitted to Jackson that he shot Rudisel. Jackson testified that he asked Harris why he shot Rudisel and Harris responded, "Man, I'm just tired of [Crips, Bloods, skinheads] messing with me. I mean, they shot my brother, and I'm just really tired of all the stuff that's going on around me." Harris did not reveal to Jackson or any of his cohorts that Rudisel had a knife on his person.

The police found Harris near the Civic Center Station and discovered the gun in his fanny pack. A spent shell casing, recovered from the scene, matched the gun seized from Harris's fanny pack. Harris conceded that he shot Rudisel but raised the affirmative defenses of intoxication and self-defense to negate his legal responsibility.[3] Harris maintained that he was not the aggressor, but that he shot in self defense. A security guard for the World Trade Center, who had observed the confrontation and the shooting, and Jackson both testified that they did not see the victim with a knife. Rudisel additionally testified that he did not have any weapons on his person and that he made no aggressive moves toward Harris. The testimony of Hoover James, Harris's best friend, that Rudisel moved towards Harris and that he saw a "glint" of silver in Rudisel's hand that he believed was a knife, paled in comparison to the strength of the government's case—three witnesses testifying that they did not see Rudisel with a knife. Even if the jury believed that Rudisel made a movement towards Harris with a knife in his hand,

despite the fact that no knife was ever discovered, the jury could have reasonably determined that the degree of force used by Harris was excessive.

During closing argument, the prosecutor referred to Saddam Hussein and the Persian Gulf War to emphasize that Harris's actions constituted unprovoked aggression and to counteract Harris's self-defense claim. Defense counsel immediately objected to the prosecutor's initial comparison of Harris's use of a deadly weapon with Saddam Hussein's unwarranted violence, asserting that the remarks were not relevant.[4] The trial court overruled the objection and instructed the prosecutor to continue. The trial judge responded, "I trust this jury is sophisticated enough to see that there's no association whatsoever."

The prosecutor continued his closing argument and stated as follows:

This was a very intentional act, made clear not only by the words right after the shooting, but by the words uttered by this Defendant right before the shooting: "I'm going to teach you a lesson, white boy." That's more or less the same thing that Saddam Hussein said to the United States last night; he's still saying he's going to teach us a lesson.

. . . .

. . . And, no, this Defendant is not Saddam Hussein, but a lot of the same principles apply. This violence was not on the same level as the violence used by Saddam Hussein, but you can't let unwarranted violence go unchecked. Justice over there and here in this courtroom requires courage. Please have the courage to find this Defendant guilty of what he did, first-degree assault.

---

**2.** Rudisel testified that he did not make any racial slurs to Harris or any of the other individuals present prior to the shooting. In contrast, Hoover James, Harris's best friend, testified that he heard an exchange of racial slurs between Rudisel and Harris.

**3.** Neither Jackson nor James concluded that Harris was intoxicated immediately prior to the shooting, although they agreed that during the course of the night he had drunk approximately one forty-ounce bottle of malt liquor.

**4.** In response to defense counsel's objection, the prosecutor asserted that he was not comparing Harris to Saddam Hussein but rather he was analogizing this country's reaction in holding Saddam Hussein responsible for his unwarranted acts of violence to the reaction the prosecutor desired the jury to have to Harris, who, as a bully and thug, also deserved to be punished for his unprovoked aggression.

Harris elected not to make further objections to these additional references to Saddam Hussein and the Persian Gulf War. Had Harris perceived a substantial prejudicial impact from these comments, Harris could have requested either the court to tender a curative instruction or to grant a mistrial. Harris, however, did not do so.

During his closing argument, defense counsel stated:

Saddam Hussein is not on trial here. Because of what is going on in the Middle East, that should not result in your deciding that LaShawn Harris is guilty of this charge.

In the prosecutor's rebuttal, the prosecutor reaffirmed that he was not comparing the two:

Ladies and gentlemen, again, let me make clear that which I stated in my first closing argument, that, no, this Defendant is not Saddam Hussein. The amount of violence is grossly different. The location of the violence is grossly different. One act is halfway around the world; the other act is less than a quarter of a mile from where you now sit right in the heart of our city of Denver. They both have been involved in naked, unwarranted aggression against defenseless human beings, and they both need to be held responsible.

Harris neither objected to these statements nor requested a mistrial.

In determining whether the evidence sustained the charge of first-degree assault in light of Harris's affirmative defenses of self-defense and intoxication, the credibility of the prosecution and defense witnesses was the primary issue for the jury to determine. Further, the trial judge properly instructed the jury to decide the case based upon the evidence introduced at trial, the law, the credibility of the witnesses, and not the arguments of counsel in closing argument. The jury apparently rejected Harris's defenses of intoxication and self defense.

Assessing the prosecutor's closing remarks within the context of the trial as a whole and all of the evidence presented, I cannot conclude that a new trial is required. In my view, these comments were not so prejudicial

as to undermine the fundamental fairness of the trial itself and to inhibit the jurors from rendering a fair verdict.

## IV.

My conclusion is also consistent with the results reached by other jurisdictions which have considered similar prosecutorial references to public figures or world events during closing argument without finding plain error. *See United States v. Endicott*, 803 F.2d 506, 513 (9th Cir.1986) ("Counsel may be allowed some latitude in illustrating their arguments by reference to notorious or historical events without being automatically found to have committed irreparable prejudice."); *United States v. Doe*, 860 F.2d 488, 492–94 (1st Cir.1988) (holding that prosecutor's inflammatory statements during closing argument which were not relevant to the defendant's guilt or innocence constituted a fundamental violation of the tenets of ethics, but did not rise to the level of plain error), *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989).

In *People v. Peterson*, 248 Ill.App.3d 28, 187 Ill.Dec. 797, 618 N.E.2d 388 (Ill.App.Ct. 1993), the defendant asserted that he was denied a fair trial because the prosecutor's closing arguments compared the "war on drugs" to the war in Iraq and invited the jury to speculate as to the distribution of drugs to children. Defendant alleged that these comments improperly invited the jury to convict him on the basis of patriotism. Defendant additionally maintained that these comments were especially damaging in that the argument was made within weeks of the conclusion of the Iraqi war. The Illinois Appellate Court concluded that the remarks did not result in substantial prejudice or affect the outcome of trial so as to deprive the defendant of a fair trial:

The prosecutor did not mistake [sic] evidence or implicate other specific rights of [the] defendant. . . . The circuit judge told the jury that closing arguments were not evidence and written instructions to that effect were given to the jury when it began its deliberations. We find no error.

*Id.* at 805, 618 N.E.2d at 396.

In reviewing similar improprieties in the prosecutor's closing argument, the New York

State Supreme Court, Appellate Division, in *People v. Graves*, 194 A.D.2d 925, 598 N.Y.S.2d 855 (N.Y.1993), stated that resolution of contentions regarding the improprieties required only limited discussion. The court opined:

> Even assuming, arguendo, that defense counsel's general objection and posttrial arguments were sufficient to preserve for review certain improprieties in the prosecutor's summation, namely, his analogizing the war on drugs to the Persian Gulf War, the police officers to "foot soldiers in [the] war on drugs" and asking the jurors to put themselves "into the position of the Detectives who are out there on the street ... [f]ighting the war", in view of the overwhelming evidence of defendant's guilt we are convinced that these comments, while improper, were harmless.

*Id.* at 927, 598 N.Y.S.2d at 857 (brackets in original).

Further, in *United States v. North*, 910 F.2d 843, 895 (D.C.Cir.), *opinion withdrawn on other grounds and superseded in part on reh'g*, 920 F.2d 940 (D.C.Cir.1990), the United States Court of Appeals held that the argument by the special prosecutor in which he linked the defendant's strategy favorably to Adolf Hitler's strategy was "[u]nquestionably inflammatory." In *North*, the prosecutor stated during closing argument that

> [s]o far in this drama in August and September of 1985, North and McFarlane are following Adolf Hitler's old strategy. He was the one who said, the victor will never be asked if he told the truth. And the idea here was if the lies work, Congress will stop asking questions.

*Id.* at 895.

Immediately after this remark, North moved for a mistrial. The district court denied North's motion, concluding that the prosecutor's statement caused no substantial prejudice to North.[5] On review, the Court of Appeals for the District of Columbia held that "[t]o suspect that the reference to Hitler swayed the jury on a close and critical issue would underestimate the common sense that we properly attribute to the jury." *Id.* The court therefore declined to reverse any of North's convictions on this ground.

The Supreme Court of Pennsylvania in *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986), correspondingly deemed the prosecutor's references to the Prince of Darkness and Hitler acceptable as examples of individuals whose horrible deeds are manifestations of evil dispositions rather than mental deficiencies which diminished their capacity to restrain their behavior. The supreme court reasoned as follows:

> Appellant complains of the injection of certain notorious, evil figures into the prosecutor's argument. However, the prosecutor did not attempt to equate appellant's deed with theirs. Rather he referred to them as examples of those whose horrible deeds were manifestations of evil and not the result of some exculpatory deficiency. The injection of such names as the Prince of Darkness and Adolph Hitler may tend to arouse the passions of the jurors, but considering the context in which the names were used, we do not find that those references were so inflammatory to have caused the jury's sentencing verdict to be the product of passion, prejudice or other arbitrary factor.

*Id.* 512 A.2d at 1160.

In contrast, in *United States v. Payne*, 2 F.3d 706 (6th Cir.1993), the defendant was found guilty of obstructing and deserting mail. On appeal, the defendant argued that he did not receive a fair trial because of prosecutorial misconduct. In evaluating the

---

5. In his closing argument, North's counsel stated:

> But worst still and beyond anything I have heard in a courtroom, and outrageous to the extent that it should send a course of rage through everybody in this room, is the reference to Adolf Hitler.
> This marine, retired, was linked in this courtroom to Adolf Hitler. Some in this room have fought Adolf Hitler. They know what

Adolf Hitler was. And this man is not Adolf Hitler and he doesn't do things like Adolf Hitler, and to suggest it indicates the extraordinary drive, the force, the power of this government to put its might on top of Colonel North, to see what they can say is a crime. You should be offended by it. And you should judge everything they say, because anyone that will link Colonel North to Adolf Hitler is not credible and should not be believed.
*North*, 910 F.2d at 895 n. 32.

prosecutorial misconduct, the United States Court of Appeals reviewed the " 'degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were [made] deliberately or accidentally ... and the strength of the [case against the defendant].' " *Id.* at 711–12 (quoting *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976)). The court examined the prosecutor's *continual* references to the plight of poor children, comments about people's thoughts and feelings at Christmastime, comments about the layoffs by General Motors, and the closing of plants *during opening* statement, examination of witnesses, and closing argument. The prosecutor made these comments despite admonitions from the trial judge. The court concluded that the comments had the ability to mislead the jury and ignite sympathetic passion for the victims and against the defendant.

*Payne* highlights the circumstances where a prosecutor's comments so inflame and impassion the jury that a new trial is warranted. The circumstances surrounding the present case are distinguishable from *Payne*. The remarks at issue here did not permeate the entire trial; rather, they were isolated comments made during closing argument only. Further, the trial judge overruled defense counsel's objection and allowed the prosecutor to proceed with closing argument. Moreover, defense counsel neither made additional objections nor did the trial judge admonish the prosecutor at any time during the remainder of the prosecutor's closing argument.

In sum, the prosecutor's remarks during closing argument were improper but they did not result in substantial prejudice to Harris or deprive him of a fair trial. Because I believe that the prosecutor's comments did not rise to the level of plain error, I would affirm the defendant's conviction.

I am authorized to say that Chief Justice ROVIRA joins in this concurrence and dissent.