PEOPLE v ENOS

Docket Nos. 92544, 92736. Submitted April 16, 1987, at Lansing.
      Decided January 6, 1988.

William A. Enos was convicted of uttering and publishing a false
    instrument following a jury trial in Tuscola Circuit Court,
    Patrick R. Joslyn, J. Defendant's conviction, in large part,
    rested upon the testimony of two accomplices whose trial
    testimony implicated defendant in the check writing scheme in
    which they were involved. During the trial, the prosecution
    brought out during the questioning of these witnesses that they
    had been permitted to plead guilty to a reduced charge in
    exchange for their truthful testimony and that they understood
    that the plea agreement would fail if they failed to testify
    truthfully. During closing arguments, the prosecution empha-
    sized the fact that the plea agreement was conditional upon the
    accomplice witnesses telling the truth. Defendant appealed.

The Court of Appeals *held:*

While neither the admission into evidence of a plea-bargain
    agreement of a testifying accomplice which is conditioned upon
    the accomplice giving truthful testimony nor prosecutorial
    reference to such an agreement necessarily constitute prosecu-
    torial vouching such as will mandate reversal, where, as here,
    the tenor of the testimony and arguments suggest that the
    government has special knowledge that the witness is testifying
    truthfully, reversal is mandated.

Reversed and remanded.

CRIMINAL LAW — WITNESSES — PLEA BARGAINS — PROSECUTORIAL
      VOUCHING.

The admission into evidence of a plea-bargain agreement of a
    testifying accomplice which contains a promise by the accom-
    plice to testify truthfully is not in itself erroneous and refer-
    ence to it by the prosecution in its final argument does not

REFERENCES

Am Jur 2d, Evidence §§ 563, 564.

Supreme Court's views as to plea bargaining and its effects. 50 L Ed
    2d 876.

Use of plea bargain or grant of immunity as improper vouching for
    credibility of witness—state cases. 58 ALR4th 1229.

necessarily constitute prosecutorial vouching mandating reversal; however, reversal is mandated where the tenor of such evidence and argument is to suggest that the government had some special knowledge not known to the jury that the witness was testifying truthfully.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William D. Bond,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Chari Grove*), for defendant on appeal.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of two counts of uttering and publishing, MCL 750.249; MSA 28.446. Thereafter, defendant pled guilty to being an habitual offender, second offense, MCL 769.10; MSA 28.1082. Defendant was then sentenced to ten to twenty-one years in prison on each count and now appeals as of right. We find one issue dispositive and reverse defendant's convictions.

Defendant was convicted, in large part, because of the testimony of two accomplices, Wesley Davidson and Kurt Fromm. They both testified that they found a checkbook in a dumpster and that defendant instructed Fromm to make out checks to Davidson and sign the checking account holder's name to the checks. The three of them then went to party stores and auto parts stores and cashed several checks. Defendant's version of events, supported somewhat by defense witnesses, was that Davidson and Fromm had told him they had re-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ceived their social security and insurance checks and that those were the checks they were cashing at the auto parts stores. This testimony was bolstered by letters from Davidson and Fromm, written and signed while in jail, which stated that the defendant did not know anything about the checks which were cashed, but that defendant thought Davidson and Fromm were cashing social security and insurance checks which they had received in the mail. At trial, both Davidson and Fromm testified that the letters were a lie.

It is the examinations of both Davidson and Fromm and the closing arguments with respect to their testimony which constitute the heart of the prosecutorial misconduct which we find to have occurred in this case. Although the introduction of an accomplice's promise of truthfulness is not necessarily error, it is error if used by the prosecutor to suggest that the government has some special knowledge that the witness is testifying truthfully. *People v Buschard,* 109 Mich App 306; 311 NW2d 759 (1981), vacated 417 Mich 996; 334 NW2d 376 (1983), reaff'd 129 Mich App 160; 341 NW2d 260 (1983).

On direct examination of accomplices Davidson and Fromm, the prosecutor emphasized that they were allowed to plea bargain in exchange for truthful testimony regarding defendant:

*Q.* And were you allowed to plead to one count of attempted uttering and publishing, a felony charge, if you testified truthfully regarding William Enos?

*A.* [*Witness Davidson*] Yes.

*Q.* And were you aware that if you do not testify truthfully here that that deal would not have been fulfilled on your part?

*A.* Yes.

> *Q.* Have you testified truthfully today regarding this matter?
>
> *A.* Yes I have.
>
> \*   \*   \*
>
> *Q.* Were you allowed to plead to a lesser felony in exchange for your truthful testimony in this matter?
>
> *A.* [*Witness Fromm*] Yes.
>
> *Q.* You understand that if you do not testify truthfully that the deal fails, and you could be recharged?
>
> *A.* Yes.

On cross-examination, Davidson testified that he had fled to Georgia after the crimes because "two guys that came from nowhere" had threatened him. On redirect, the prosecution got Davidson to admit that the incident had never occurred:

> *Q.* Do you recall having a conversation with me before this trial started today?
>
> *A.* Yes.
>
> *Q.* And that at that time you told me that incident had not occurred?
>
> *A.* Yes.
>
> *Q.* Do you understand that you're under oath right now?
>
> *A.* Yes.
>
> *Q.* You're sworn to tell the truth?
>
> *A.* Yes.
>
> *Q.* Did that incident occur?
>
> *A.* No.
>
> *Q.* Was there some sort of threat made to you however before you left for Georgia?
>
> *A.* No
>
> *Q.* All right. Why did you go to Georgia?
>
> *A.* It was Kurt's idea. He wanted to leave state and take me with him, drag me down there with him.
>
> *Q.* Okay. But then the two of you returned voluntarily?

*A.* Yes.

*Q.* Do you realize that by admitting just now that you lied here in telling about an incident that didn't occur, that the plea agreement entered into between yourself and the prosecution could be voided and you could be charged with another crime, do you understand that?

*A.* Yes.

*Q.* That the agreement was that you would testify truthfully?

*A.* Yes.

Finally, in closing argument, the prosecutor stated with regard to Davidson:

> Now the agreement isn't that he testifies against Mr. Enos, it's that he testified truthfully. And when he got up there and he's on cross-examination he started giving this routine about yeah, these two guys had jumped me up town in Caro. When he was confronted, no, that's not the truth. He admitted, yea, that's not the truth. He realized —he was informed right then that the deal would not necessarily be honored since he breached it. Was asked if he wanted to change anything else about his story, if the rest of the story was true or not, and he indicated yes the rest of it was true. I lied about the two guys. But as far as Mr. Enos knew, and what I told Mr. Enos, everything I've told you has been true.

In this case, the prosecutor did not merely discuss the plea agreement containing the promise of truthfulness. She told each accomplice witness that if he did not tell the truth the deal would be voided. She called Wesley Davidson back to the stand and forced him to admit that he had lied about the two men who had threatened him. Then she again threatened Davidson with voiding his plea agreement and with a charge of perjury. She

then asked if he had lied about anything else, and he stated that he had not. During closing argument, the prosecutor reemphasized that Davidson had promised to testify truthfully, had been informed on the stand the deal might not be honored since he had lied, and then had stated that the rest of his story was true. Under these circumstances, we feel that the prosecutor impermissibly used the agreement "to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully." *Buschard, supra.*

In addition, the accomplices' testimony was also bolstered by another comment made in the prosecutor's closing argument. She stated:

> And Mr. Fromm also tells you that, yes, he'd been charged with some felony out of this day's work, and he was allowed to plead to one count of attempted uttering and publishing, seven year felony, in exchange for his truthful testimony in the matter of People versus William Enos.

There were no facts in evidence as to the maximum penalty to which Fromm and Davidson pled. In fact, the maximum sentence was five, not seven years. The prosecutor's reference may have led the jury to infer that Davidson and Fromm would be serving seven years in return for their testimony. We find that this further wrongfully bolstered the credibility of these two witnesses.

Reversed and remanded for a new trial.