*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY O'NEIL WATSON,

Defendant-Appellant.

UNPUBLISHED
March 09, 2026
11:18 AM

No. 369988
Wayne Circuit Court
LC No. 11-002920-01-FC

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

In 2011, a jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), two counts of assault with intent to murder (AWIM), MCL 750.83, intentional discharge of a firearm at an occupied structure, MCL 750.234b, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. This Court subsequently affirmed his convictions and sentences.[1] He thereafter moved for relief from judgment, asserting various errors at trial. The trial court denied his motion, and defendant now appeals. We affirm.

## I. BACKGROUND

This case arises out of violence between two rival Detroit gangs: the "KMB" gang, short for "Killers Mean Business," and the "220" gang, short for "Second to None." Defendant and his codefendant, Cornelius Robinson, were members of KMB.

On July 24, 2010, a KMB member known as "Tookie" hosted a party on Pelkey Street in Detroit. Members of both KMB and 220 attended the party, though defendant did not. Sometime after midnight on July 25, 2010, a fight broke out on the front lawn between members of the two gangs. Witnesses heard Robinson yell to "get the chopper," apparently referring to an AK-47 assault rifle, and another gang member then opened fire on the crowd with an AK-47. Robinson

---

[1] *People v Watson*, unpublished per curiam opinion of the Court of Appeals, issued February 10, 2015 (Docket No. 306989).

was shot in the melee. The partygoers then dispersed, with KMB members leaving the party and 220 members relocating to a nearby residence on Fairport Street.

Later that evening, Reese Williams was driving near the Fairport residence with two members of the 220 gang, Jashawa Nevitt and Devontae Smith, when they heard gunshots coming from the direction of the Fairport house. As Williams drove toward the residence, he was struck in the left upper chest by gunfire from an AK-47. He later died from his injuries.

At trial, Nevitt testified that, moments before the shooting, he saw defendant standing on the sidewalk holding an AK-47. Smith identified defendant as the person he saw running away from the scene immediately after the shooting. Another witness, Aaron Knighten, testified that he was at the Fairport residence when gunshots sounding like AK-47 fire started coming in his direction, causing him and others to run away, only to encounter defendant, who started shooting at them with a handgun from the other direction, which Knighten likened to an ambush. Two other witnesses, La'Trisha Ward and Danique Dumas, testified that they were together in a car near the Fairport house when they heard gunfire. After learning by telephone that Williams had been shot, they were driving to the hospital when they saw defendant running toward a vehicle near Alcoy Street and Seven Mile Road, approximately two blocks from Fairport Street. They did not see anything in defendant's hands at that time.

The prosecution's theory was that defendant sought to retaliate against members of 220 for the gunshot Robinson sustained earlier in the evening. It argued that the jury could find defendant guilty of first-degree murder because he shot Williams with the AK-47 or because he aided and abetted the shooter, as the evidence showed he was one of the gunmen involved in the attack.

The jury convicted defendant as described above. The trial court sentenced him to 36 to 60 years' imprisonment for first-degree murder, 18 years and 9 months' to 40 years' imprisonment for each AWIM conviction, 2 years' imprisonment for felony-firearm, and 2 years' probation for discharging a firearm at an occupied dwelling. Defendant appealed as of right, challenging a supplemental jury instruction given in response to a juror's question during deliberations, and this Court affirmed. *People v Watson*, unpublished per curiam opinion of the Court of Appeals, issued February 10, 2015 (Docket No. 306989), pp 1-3.

In 2023, defendant moved for relief from judgment under MCR 6.500 *et seq*. He argued that he was denied a fair trial because an erroneous aiding-and-abetting instruction permitted the jury to convict him without finding that he personally possessed the specific intent required for first-degree murder and AWIM. Alternatively, he argued that the evidence was insufficient to support such an instruction. He further alleged that the prosecution presented and failed to correct false or misleading testimony from Smith, Nevitt, and Knighten, and that trial and appellate counsel were ineffective. Defendant asserted that these claims established good cause and actual prejudice under MCR 6.508(D) or that waiver of the good-cause requirement was warranted based on actual innocence. He requested a *Ginther*[2] hearing to develop the record on his ineffective-assistance claims.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The trial court denied the motion in a written opinion and order. It found that defendant failed to establish entitlement to relief under MCR 6.508(D) and that the underlying claims of error lacked merit. Defendant now appeals by leave granted.

## II. ANALYSIS

### A. STANDARDS OF REVIEW AND GOVERNING LAW

We review for an abuse of discretion a trial court's decision on a motion for relief from judgment. *People v Owens*, 338 Mich App 101, 113; 979 NW2d 345 (2021). "The trial court abuses its discretion when it makes an error of law or when its decision falls outside the range of reasonable and principled outcomes." *Id*. We review for clear error the trial court's factual findings supporting its decision on a motion for relief from judgment. *People v Poole*, 349 Mich App 594, 610; 28 NW3d 769 (2024).

Motions for relief from criminal judgments are governed by MCR 6.500 *et seq*., which is "the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process." *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992). A defendant bears the burden of establishing entitlement to relief. MCR 6.508(D).

Because defendant did not raise the claims of error underlying his motion for relief from judgment on direct appeal, he must demonstrate "both good cause for failing to raise such grounds earlier as well as actual prejudice." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018); see also MCR 6.508(D)(3)(a) and (b). The good-cause prong of MCR 6.508(D)(3) may be "established by proving ineffective assistance of appellate counsel" for failing to raise the underlying claim of error on direct review. *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995). To establish actual prejudice, a defendant must demonstrate that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MCR 6.508(D)(3)(b)(i)(A).

Defendant contends that his appellate counsel was ineffective for failing to raise his current claims of error on direct review and that this ineffective assistance constitutes good cause for his failure to raise the claims in his earlier appeal. Because "failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *People v Baham*, 321 Mich App 228, 236; 909 NW2d 836 (2017) (cleaned up), counsel's failure to raise these claims on direct review constitutes ineffective assistance only if the underlying claims have merit. And because defendant relies on those underlying claims to establish actual prejudice, that prong likewise requires us to examine the merits to determine whether defendant has established entitlement to relief from judgment.

### B. AIDING-AND-ABETTING INSTRUCTIONS

Defendant raises two claims of error pertaining to the aiding-and-abetting instructions. First, he argues that the trial court erred as a matter of law when it instructed the jury on aiding and abetting because the instructions allowed the jury to find him guilty of first-degree premeditated murder and AWIM even if he lacked the requisite intent to kill. Second, he challenges the sufficiency of the evidence supporting an aiding-and-abetting instruction. We address each argument in turn.

## 1. INTENT REQUIREMENT

Defendant did not challenge the substance of the aiding-and-abetting instructions in the trial court, so our review is for plain error affecting substantial rights. See *People v Sabin (On Rehearing)*, 242 Mich App 656, 657; 620 NW2d 19 (2000); *People v Spaulding*, 332 Mich App 638, 652-653; 957 NW2d 843 (2020). "To avoid forfeiture under the plain error rule three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Spaulding*, 332 Mich App at 653 (citation omitted). Reversal is warranted only if "the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (citation omitted). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted).

"The elements of first-degree premeditated murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). Both offenses thus require the prosecution to prove beyond a reasonable doubt that the defendant intended to kill the victim.

In this case, the prosecution advanced two theories of defendant's guilt with respect to the first-degree murder and AWIM charges: first, that defendant was the shooter wielding the AK-47 who caused Williams's death, and second, that defendant aided and abetted the shooter. Regarding the latter theory, the prosecution requested an instruction consistent with M Crim JI 8.1 and M Crim JI 8.5. The trial court granted that request and instructed the jury as follows:

> In this case, as I said, ladies and gentlemen, the Defendant is charged with committing first[-]degree premeditated murder, two counts of assault with intent to murder, discharge of a firearm at an unoccupied building and felony firearm, or intentionally assisting someone else in committing one or more of these crimes. Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and be convicted of that crime as an aider and abetter [sic]. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First element, that the alleged crime was actually committed by the Defendant or someone else. It does not matter whether anyone else has been convicted of that crime.

Second element, that before or during the crime the Defendant did something to assist in the commission of the crime.

Third element, that the Defendant must have intended the commission of the crime alleged, or must have known that the other person intended its commission at the time of giving the assistance. Even if the Defendant knew that the alleged crime was planned or was being committed, the mere fact that he was present when it was committed is not enough to prove that he assisted in committing it.

Defendant argues that the aiding-and-abetting instruction permitted the jury to convict him of first-degree murder and AWIM based on a lesser *mens rea*—mere knowledge—than that which is required by statute. We disagree.

As our Supreme Court explained in *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006), "[a] defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." The elements of aiding and abetting are therefore

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Id*. at 6 (citation omitted; alteration in original).]

The instruction given here was consistent with our caselaw and correctly set forth the elements of aiding and abetting. Indeed, our Supreme Court has expressly rejected the argument that an aiding-and-abetting conviction requires "the accomplice to have the identical intent as the principal." *Id*. at 13. Instead, "a defendant is liable for the offense the defendant intended to commit or *intended to aid and abet*." *Id*. (emphasis added). Because the trial court properly instructed the jury, defendant cannot establish clear or obvious error. Accordingly, the trial court did not abuse its discretion by denying relief on this basis.

## 2. SUFFICIENCY OF EVIDENCE

Defendant also challenges the sufficiency of the evidence supporting the aiding-and-abetting instruction. He preserved this issue by objecting in the trial court, and we therefore review for an abuse of discretion "the trial court's determination that a jury instruction is applicable to the facts of the case." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016).

A trial court is obligated to give requested instructions on any theory or defense if there is evidence to support it. *Ogilvie*, 341 Mich App at 35. "When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury." *Armstrong*, 305 Mich App at 239. Even when "somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently

-5-

protected the defendant's rights." *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013) (quotation marks and citation omitted). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *Id.* (citation omitted).

The trial court did not abuse its discretion in concluding that an aiding-and-abetting instruction was supported by the evidence. Witnesses described multiple shooters targeting 220 members, and the prosecution's theory was that KMB members murdered Williams in retaliation for the earlier shooting of Robinson. Although the testimony varied regarding defendant's precise role, multiple witnesses identified him as a KMB member and the person who fired the shot that killed Williams. The evidence therefore supported a finding that multiple KMB members, including defendant, acted in concert to ambush 220 members in retaliation for Robinson's shooting. The trial court did not abuse its discretion in providing the aiding-and-abetting instruction or in denying relief on that basis.

## C. FALSE TESTIMONY

Defendant next contends that the prosecution presented and failed to correct false or misleading testimony from Smith, Nevitt, and Knighten, thereby violating defendant's due-process rights. Because he did not preserve this claim of error in the trial court, our review is for plain error affecting substantial rights. *Spaulding*, 332 Mich App at 652-653.

The use of false testimony by a prosecutor violates a defendant's right to due process. *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020). Accordingly, the prosecution may not knowingly present false evidence, including false testimony, nor may it take advantage of false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). Though "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony," prosecutors have "an *affirmative duty* to correct patently false testimony." *Brown*, 506 Mich at 446-447 (quotation marks and citation omitted). A defendant is entitled to a new trial when there is any reasonable likelihood that uncorrected false testimony affected the jury's verdict. *Id.* at 447.

A defendant who alleges that the prosecution relied on false testimony bears the burden of demonstrating that the evidence or testimony was, in fact, false. See *Bass*, 317 Mich App at 272. "Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Id.* at 275. Mere inconsistencies or difficulty recalling earlier statements or testimony do not amount to perjury. *Id.* at 274-275.

At trial, Smith testified that he saw defendant running away right after Williams was shot. However, Smith did not identify defendant as the person who shot Williams; he merely described defendant running away after the shooting. Defendant submits that the prosecution took advantage of false testimony by asking Smith whether he told police "who shot [the victim]" in his initial statement, which implied that Smith had identified defendant as the shooter. Viewed in context, however, Smith's testimony reflects that he believed defendant was the shooter because defendant was the only person Smith observed in the area immediately after the shooting. On cross-examination, Smith acknowledged that he did not initially identify defendant because he had some

doubts about whether "[his] answer was right or not," but he explained that he became more confident in his identification over time.

Moreover, the jury was instructed that the attorneys' questions were not evidence and that it should "consider [those] questions only as they give meaning to the witness's answers." To the extent the prosecution's questioning suggested that Smith had explicitly identified defendant as the shooter in his initial statement, any potential prejudice was cured by that instruction. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). Defendant has not established that the trial court committed clear or obvious error regarding Smith's testimony.

Regarding Nevitt, he testified that he heard a gunshot and then saw defendant standing nearby on the sidewalk, holding an AK-47. Defendant contends that this testimony was false, citing inconsistencies in Nevitt's prior police statements, testimony he provided under investigative subpoena, and his preliminary-examination testimony. At trial, Nevitt acknowledged that he did not identify defendant as the shooter until his second statement to police and that he previously testified that he could "not really" see the shooter's face. He further admitted on cross-examination that he had been dishonest in prior testimony. These inconsistencies, standing alone, do not establish that Nevitt's trial testimony was false. See *Bass*, 317 Mich App at 274-275. Moreover, trial counsel thoroughly explored the discrepancies on cross-examination, and the jury was instructed that it could consider prior inconsistent statements when assessing credibility. On this record, defendant has not demonstrated plain error regarding Nevitt's testimony.

Finally, defendant challenges the prosecution's handling of Knighten's testimony. At trial, Knighten testified that he saw defendant fire a handgun near the Fairport Street house. At the preliminary examination, Knighten also testified that Antoine Jenkins fired an AK-47 at the house and that defendant fired a handgun from the other side of the street. Defendant submits that the prosecution failed to elicit the "critical evidence" concerning Jenkins at trial, thereby misleading the jury.

We find no error. That Knighten provided more detailed testimony at the preliminary examination does not render his trial testimony false. Indeed, his trial testimony regarding defendant's role was consistent with his earlier account. Defendant cites no authority requiring the prosecution to elicit testimony identifying Jenkins, nor does he explain how the failure to present that testimony misled the jury. He has therefore abandoned this claim of error. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (recognizing that an appellant may not "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position") (citation omitted). Defendant has not established error regarding Knighten's testimony.

Because defendant has not shown plain error with respect to any of the alleged false testimony, he has failed to demonstrate that the trial court abused its discretion by denying his motion for relief from judgment on that basis.

## D.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next asserts that his trial counsel provided ineffective assistance. "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). We review the trial court's factual findings for clear error and questions of law de novo. *Id*. Because no *Ginther*[3] hearing was conducted, "our review is limited to mistakes that are apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

Both the Michigan and United States Constitutions guarantee criminal defendants the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant asserting ineffective assistance of counsel "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citation omitted).

To establish deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant alleging ineffective assistance "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. We do not "second-guess counsel on matters of trial strategy" or "assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted).

Defendant first argues that counsel was ineffective for failing to object to Dumas's identification of defendant at trial. He asserts that Dumas had a limited opportunity to observe the person she identified, had seen defendant only once before, and failed to identify him during a prior lineup and at the preliminary examination. "Due process protects criminal defendants against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020) (quotation marks and citation omitted). A defendant challenging identification evidence on due-process grounds "must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). Identification evidence must be excluded when "(1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *Sammons*, 505 Mich at 41.

Even assuming that Dumas's identification was objectionable, defendant has not established prejudice. Critically, Dumas's testimony was cumulative of that offered by Ward, who

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

was with Dumas when the two saw defendant running near the Fairport Street residence. Even if trial counsel had successfully objected to Dumas's identification, the jury would have nonetheless heard evidence that defendant was seen fleeing the area shortly after the shooting. Defendant therefore cannot establish that counsel's purported error affected the outcome of the proceedings, and he is not entitled to relief on the basis of this claim.

Defendant next contends that trial counsel was ineffective in failing to object to the admission of Knighten's cooperation agreement. At the time of trial, Knighten was serving 5 to 15 years' imprisonment for carjacking and felony-firearm. On direct examination, the prosecution introduced a cooperation agreement requiring Knighten to cooperate with law enforcement and the prosecutor in the instant case. The trial court admitted the cooperation agreement into evidence without objection from defense counsel. Defendant avers that the cooperation agreement was inadmissible on direct examination and that the prosecution used the cooperation agreement to impermissibly vouch for Knighten's credibility, and defense counsel's failure to object constituted deficient performance that affected the outcome of the trial.

We find defendant's argument regarding the cooperation agreement unavailing. As an initial matter, defendant cites no binding authority supporting his claim that cooperation agreements are categorically inadmissible on direct examination unless the witness's credibility has been attacked. Contrary to his claim, our Supreme Court has explained that the introduction of an agreement between the prosecution and a cooperating witness constitutes error only when the prosecutor suggests that he or she has some special knowledge that the witness is testifying truthfully, i.e., if the prosecutor uses the cooperation agreement to vouch for the witness's credibility. *People v Enos*, 168 Mich App 490, 492, 495; 425 NW2d 104 (1988); see also *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). The prosecution here did not imply any special knowledge of the veracity of Knighten's testimony. Defendant has therefore not shown that the cooperation agreement was inadmissible or that counsel performed deficiently by failing to object.

Finally, defendant submits that trial counsel was ineffective for failing to elicit testimony that Knighten previously identified Antoine Jenkins as the person wielding the AK-47. Although Knighten testified at trial that defendant fired a handgun and someone else fired the AK-47, he was not asked to identify the latter shooter, and defense counsel did not cross-examine him.

Defendant contends that the "failure to elicit this clear exculpatory evidence was incompetence and prejudicial." We disagree. In his closing argument, trial counsel explained his decision not to cross-examine Knighten:

> Ladies and gentlemen, Mr. Knighten, you saw I did not cross-examine him, don't think anything about that. You heard Mr. O'Donnell [Robinson's counsel] ask him several questions before. How many questions can I ask a guy who took a deal to save himself from life in prison? And you will be instructed by the Judge to that very fact. Charged with two carjacking's [sic], he took a deal, not life in prison. It's your call on what that motivation is or if he had any motivation to testify. But the prosecutor is trying to say, well, if you don't necessarily believe Smith and Nevitt than [sic] believe Knighten because Knighten was truthful. Mr.

Knighten's not 220, he's just the music division of the 220 gang, and that's just kind of a subsection so 220 has problems, not necessarily his problem.

But what I find real funky about all of this is that Mr. Knighten did not come forward until the new year. This happened in July, remember, ladies and gentlemen, July. He comes forward in the new year, gets a deal to testify, safe [sic] him from potential life in prison.

Defense counsel later argued that even if the jury credited Knighten's testimony, it established only that defendant possessed a handgun. Because Williams was struck by gunfire from an AK-47, counsel argued, Knighten's testimony did not prove that defendant fired the fatal shot.

The record demonstrates that counsel's decision not to cross-examine Knighten was a matter of trial strategy. Rather than reinforce that Knighten saw defendant fire a handgun at members of 220 as they fled the Fairport Street house, counsel attacked his credibility based on the cooperation agreement and timing of his disclosure. Counsel also used Knighten's testimony to argue that defendant did not fire the AK-47. Although that strategy was ultimately unsuccessful, we may not second-guess counsel on matters of trial strategy or assess counsel's strategy with the benefit of hindsight. *Traver*, 328 Mich App at 422-423. Defendant has not shown that counsel's performance was constitutionally deficient.

Accordingly, defendant has not established ineffective assistance of counsel and is not entitled to relief on that basis.

## III. CONCLUSION

Because the claims underlying defendant's motion for relief from judgment lack merit, the trial court did not abuse its discretion by denying the motion. Nor did the court err in concluding that defendant failed to establish good cause or actual prejudice under MCR 6.508(D)(3). We therefore affirm the order denying defendant's motion for relief from judgment.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman

-10-